UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Ann Marie Mogenhan, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 98-0817 (RWR) |
| ) | |
| Thomas Ridge, Secretary, ) | |
| Department of Homeland Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

DEFENDANT'S STATEMENT OF MATERIAL FACTS
<u>NOT IN GENUINE DISPUTE</u>

Pursuant to Local Rule 7.1(h), defendant respectfully submits this statement of material facts to which there is no genuine dispute and which entitle the defendant to judgment as a matter of law.

1. Plaintiff began employment with the United States Secret Service ("USSS") as a Management Analyst, GS-9-343, in the Policy Analysis and Records Systems Branch ("PARS"), Management and Organization Division ("MNO") in September 1990. ROI at 73.

2. On or about July 25, 1991, plaintiff received her performance appraisal for the rating year ending June 30, 1991. ROI at 74.

3. On this July 1991 rating, Plaintiff received a numerical rating of 300 on a scale of 0 to 400, which was classified as "Exceeds Fully Successful" ROI at 74.

4. Plaintiff received a 4 in "Administration" and a 3 in "Communication." ROI at 10, 18.

5. After receiving the performance appraisal, plaintiff claimed that she had never received her job elements and advised her supervisor, John Machado, Branch Chief – PARS, that she would be filing an internal grievance. ROI at 74.

6. On or about August 9, 1991, plaintiff filed an internal grievance concerning her annual performance appraisal for the year ending June 30, 1991. See ROI at 12.

7. A fact finding was conducted and it was determined that plaintiff's rating would be rescinded and that she would be rated in 90 days after receiving her elements and standards. ROI at 15.

8. Plaintiff received a written response to her grievance on January 21, 1992. ROI at 15.

9. On October 1, 1991, Mr. Machado presented the plaintiff with new elements and standards. Id.; See also Employee Performance Planning & Appraisal Form, ROI at 16.

10. Mr. Machado advised the plaintiff that a new rating period would begin that day and that she would receive a new rating in 90 days. See ROI at 77.

11. Mr. Machado also advised the plaintiff that she had been promoted to the GS-11 level. ROI at 77.

12. Plaintiff was promoted to the GS-11 level effective October 6, 1991. Standard Form 52, Request for Personnel Action, effective date October 6, 1991.

13. On October 16, 1991, plaintiff met with Rob Keefe, the Chief of MNO and Mr. Machado. ROI at 78.

14. Mr. Keefe spoke with the plaintiff about her dissatisfaction with her employment with the Secret Service and in particular MNO. Hearing Transcript, volume IV at 189-193.

15. During this meeting, plaintiff advised Mr. Keefe that she did not trust her supervisors in MNO. ROI at 78; Hearing Transcript, vol. 4 at 193:10-14.

16. On January 16, 1992, Mr. Machado provided plaintiff with her new performance appraisal for the rating period October 1, 1991 through December 31, 1991. ROI at 81.

17. Plaintiff received a final numerical rating of 270 on a scale of 0 to 400, which was classified as "Fully Successful."[1] ROI Tab at 18.

18. Plaintiff received a 2 in the area of "Communication" and a 3 in the area of "Administration." ROI at 18.

19. Plaintiff refused to sign the appraisal. ROI Tab 2 at 81-82.

20. Plaintiff later returned to Mr. Machado's office where the Plaintiff and Mr. Machado discussed work related issues. ROI at 82.

21. Plaintiff advised Mr. Machado that she wanted work that was "commensurate with [her] job level." ROI at 82.

22. Mr. Machado advised plaintiff that she would be assigned the Administrative Manual. During this meeting, Mr. Machado also advised the plaintiff that her work schedule could be changed. ROI at 82; See also ROI at 111.

23. Plaintiff walked out of Mr. Machado's office. ROI at 82.

24. On January 14, 1992, an accident involving a water main occurred in

---

[1] This rating was prepared because plaintiff successfully grieved the appraisal she received in July 1991. As a result, Mr. Machado was required to re-rate the plaintiff.

Washington, D.C. which caused some areas to experience flooding. ROI at 79.

25. Plaintiff and two other PARS employees, believing that the Secret Service building was closed, left work early. ROI at 79.

26. The next morning, Mr. Machado requested a written statement from the three explaining why they left work several hours early. ROI at 80.

27. Mr. Machado also advised the three that they were going to be charged as absent without leave (AWOL) for the remainder of that workday. ROI at 80.

28. Plaintiff was never charged as AWOL; instead, on January 24, 1992, plaintiff received a memorandum of counseling in connection with this incident. ROI Tab 13 at 211. See also Id. at 207; Hearing Transcript, Vol. 2 at 200:15-16.

29. The memorandum of counseling was later expunged from plaintiff's records as a result of an administrative grievance filed by the plaintiff on January 27, 1992. See ROI at 200, 207.

30. On July 20, 1992, plaintiff received her performance rating for the year ending June 30, 1992. ROI Tab 22 at 354.

31. Plaintiff received a 280 on a scale of 0 to 400, which is classified as "Fully Successfully." ROI Tab 22 at 356.

32. Plaintiff received a 3 ("exceeds fully successful") on all but the performance element for "interpersonal relations" for which she received a 1 ("minimally successful"). The justification for this rating was that:

> "[e]mployee does not use tact and diplomacy in dealing with all levels of personnel both within and outside the division, and has a great deal of difficulty maintaining good working relationships with people with whom regular contact is essential. Does not work well as a team member. Is not sensitive to the feelings of others and is ineffective in dealing with conflict or

other emotional situations. In general, this employee has a negative effect on the moral and motivation of other employees.

ROI at 357.

33. While working for the Social Security Administration prior to her employment with the Secret Service, plaintiff claimed that she had developed heat triggered migraine headaches as a result of her working environment. ROI at 85; 94.

34. Plaintiff filed an injury claim with the Office of Worker's Compensation Programs (OWCP). ROI at 85;94.

35. This claim was accepted by OWCP as an occupational disease claim. ROI at 225.

36. Plaintiff was then able to seek reimbursement for any related sick leave usage through OWCP. ROI at 86.

37. When the plaintiff came to work for the Secret Service, plaintiff continued to submit such claims through OWCP. ROI at 229; 234-237; 242-243.

38. Plaintiff's supervisor, John Machado, was aware that plaintiff had an approved worker's compensation claim as plaintiff indicated her worker's compensation claim number on her leave slip. ROI at 112.

39. Despite Plaintiff's use of sick leave, Mr. Machado believed that Plaintiff was still able to get her work done. ROI at 112.

40. Plaintiff left work early because of a migraine headache only a few occasions while employed by the Secret Service. Deposition of Anne Marie Mogenhan, Volume 2, at 5: 9-17; ROI at 112.

41. There were very few instances where Plaintiff left work because of illness. Plaintiff's Deposition, Vol. 2 at 5:11-12.

42. On the Standard Form 177, Statement of Physical Ability for Light Duty Work, submitted to the Secret Service in connection with plaintiff's employment application, plaintiff indicated that she could work under the following conditions: extreme heat, dusty atmosphere, and some exposure to fumes, smoke, or gases. ROI at 100.

43. From September 23, 1990 until October 4, 1992, Plaintiff worked in an open office environment in room 670, 1310 L Street, NW, Washington, D.C., which was temperature controlled. May 12, 1993, letter; Deposition of John Machado at 37-39.

44. Beginning on or about October 4, 1992, Plaintiff was transferred to an individual office setting within room 670 complex. May 12, 1993, letter.

45. During this period of employment, the MNO division had two air quality measurements undertaken by Biospherics Incorporated on December 20, 1991, and again on May 14, 1992. Biospherics Incorporated Reports dated December 20, 1991 and May 14, 1992.

46. These results showed the average temperature/humidity to be 77 degrees/26 percent as measured in the morning and afternoon for Plaintiff's work area. Biospherics Incorporated Report dated December 21, 1991.

47. The overall air circulation was determined to be fair. Biospherics Incorporated Report dated December 21, 1991.

48. The office which Plaintiff occupied since October 4, 1992, had an average temperature of 76 degrees and a humidity ready of 24 percent for the same time period. Biospherics Incorporated Report dated December 21, 1991.

49. Based on the recommendations presented in the Biospherics Inc. report of December 30, 1991, the building management implemented all the proposed remedies. May 12, 1993, letter.

50. The area designation which relates to Plaintiff's work area is termed "open area (by copier)" on the December 30, 1991 report.  May 12, 1993, letter.

51. The area designation which relates to Plaintiff's work area is termed "interior office (under the 6th floor)" on the May 14, 1992, report.  May 12, 1993, letter.

52. 1310 L Street, NW, Washington, D.C. was not owned by the Secret Service. Plaintiff's Deposition, Vol. 2 at 25:17-18.

53. Additionally, in 1988, all windows in the MNO division work area were covered with reflective transparent film to reduce the heating effect of the sun and to filter UV rays. May 13, 1993, letter.

54. When Plaintiff was reassigned to the Analytical Studies Branch, the Secret Service installed an air conditioning unit in Plaintiff's work area.  Hearing Transcript, vol. 2 at 199: 9-16.

55. On February 28, 1992, filed a formal complaint of discrimination, which was assigned Treasury Department (TD) number 92-115.

56. On September 14, 1992, the Plaintiff filed another formal complaint of discrimination which was assigned TD number 92-1238.

57. Following formal investigations, a hearing was held before the EEOC on September 13-14, 1994, October 21, 1994, and October 24-25, 1994.

58. The accepted issues in this complaint were:

   1. Whether the Agency subjected plaintiff to harassment and verbal abuse on the bases of her sex (female) and disability (migraine headaches) on August 9, 1991, October 1, 1991, October 16, 1991, and October 21, 1991;

   2. Whether the Agency subjected plaintiff to harassment on the bases of her sex and disability on January 15, 1992, January 16, 1992, January 21, 1992, January 24, 1992, and in the beginning of February, 1992, by verbally harassing Plaintiff and threatening her with Absence Without Leave (AWOL);

   3. Whether the Agency (management) subjected plaintiff to character assassination and harassment on the basis of her disability and in reprisal for her prior EEO activity

      a) since April 1, 1992, and continuing until October 1992, by telling individuals that she was difficult to work with;

      b) since April 1, 1992, and continuing until October 1992, by giving her an excessive amount of work;

      c) since April 1, 1992, and continuing until October 1992, by disclosing confidential information from her personnel files regarding her grievance and complaints;

      d) on August 27, 1992, by stating that she was not civil;

      e) on August 27, 1992, by threatening to remove her from the compressed work schedule;

      f) since August 27, 1992, and continuing until October, 1992, by requiring her to report to one of three people before leaving the office;

      g) since August 27, 1992, and continuing until October, 1992, by telling plaintiff she would be watched;

   4. Whether the Agency discriminated against plaintiff on the bases of her sex and disability on January 16, 1992, by issuing her a performance appraisal

   rating of 270 for the rating period October 1, 1991 0 December 31, 1991; and

  5. Whether the Agency subjected plaintiff to harassment on the basis of her disability and in reprisal for her prior EEO activity on July 20, 1992, by issuing her a rating of 280 on her annual appraisal and including derogatory comments on that appraisal.

  See Findings and Conclusions at 2-3.

59. Plaintiff participated in a compressed work schedule. Hearing Testimony, Vol. 2 at 13-14.

60. Plaintiff was never removed from the compressed work schedule. Hearing Testimony, Vol.2 at 13-14:22-5.

61. Plaintiff had requested additional work commensurate with her grade. Hearing Transcript, Vol. 2 at 200:1-4; Machado Deposition at 103:1-2.

62. Mr. Tad King advised the plaintiff to apprise him if she found her workload excessive, but she never did so. Hearing Transcript, Vol. 2 at 20-21.

63. Mr. Machado was not aware that the plaintiff believed that she had too many assignments. Machado Deposition at 105:1-21.

64. The MNO Division had a central printer. No employee had an individual printer. Machado Deposition at 44-45.

65. The MNO Division used fans to assist in controlling the temperature in plaintiff's work area. Machado Deposition at 54-55. The fans were approximately five feet high with a diameter of approximately two feet. Id.

Respectfully submitted,


_____
KENNETH L. WAINSTEIN
D.C. Bar No. 451058
United States Attorney


_____
R. CRAIG LAWRENCE
D.C. Bar No. 171538
Assistant United States Attorney


_____
CHARLOTTE A. ABEL
D.C. BAR #388582
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-2332