UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Ann Marie Mogenhan,          ) | |
|                        ) | |
|         Plaintiff,      ) | |
|                        ) | Civil Action No. 98-0817 (RWR) |

Ann Marie Mogenhan,                    )

                           Plaintiff,              )                    Civil Action No. 98-0817 (RWR)

Thomas Ridge, Secretary,               )
Department of Homeland Security,       )

                           Defendant.             )

### DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

      Defendant Thomas Ridge, Secretary, United States Department of Homeland Security,

respectfully submits this memorandum in support of his motion for summary judgment.

Preliminary Statement

      Plaintiff, Ann Marie Mogenhan, a former Management Analyst, GS-343-9, with the

Department of Homeland Security, United States Secret Service ("Secret Service"), filed this

lawsuit initially alleging that she had been subjected to sex discrimination and retaliation in

violation of the Civil Rights Act of 1964.  Plaintiff was subsequently allowed to amend her

complaint to include claims pursuant to the Americans with Disabilities Act of 1990 and the

Rehabilitation Act of 1973.[1]

---

[1] At the time of plaintiff's employment with the Secret Service, the Secret Service was a bureau of the Department of the Treasury.  In March 2003, the Secret Service was transferred to the Department of Homeland Security.

Without any factual foundation, plaintiff speculates that the actions more fully described below were the result of unlawful discrimination in violation of Title VII and the Rehabilitation Act.  However, plaintiff is unable to muster any evidence that hints that her gender, alleged disability, or participation in the EEO complaints process was a factor in the agency's actions.

Plaintiff's Claims

In her Amended Complaint, plaintiff asserts that the Secret Service failed to provide reasonable accommodation with regard to plaintiff's heat-triggered migraine headaches. See Amended Complaint, Count I.  Plaintiff further claims that the Secret Service discriminated against her on the basis of her gender and disability when the Secret Service gave plaintiff a performance appraisal of 270 for the rating period October 1, 1991 – December 31, 1991.  See Amended Complaint, Count II.  Plaintiff also claims that the Secret Service discriminated against her on the basis of her gender, disability, and retaliated against her for prior participation in the Equal Employment Opportunity (EEO) complaints process when the Secret Service gave plaintiff her performance appraisal on July 20, 1992.  See Amended Complaint, Count III. Plaintiff additionally contends that the Secret Service created a hostile working environment for plaintiff because of plaintiff's gender, disability, and in retaliation for plaintiff's prior participation in the EEO complaints process. See Amended Complaint, Count IV.

As discussed below, the uncontroverted record demonstrates that Defendant is entitled to summary judgment with respect to each of these claims.

Statement of Facts

Plaintiff, Ann Marie Mogenhan, is a white female, and began employment with the Secret Service as a Management Analyst, GS-9-343 in the Policy Analysis and Records Systems

2

Branch (PARS), Management and Organization Division (MNO) in September 1990. See Report

of Investigation (ROI) Tab 2 at 73.

The United States Secret Service is a law enforcement and protective agency operating

under the provisions of title 18 of the United States Code, section 3056.  Pursuant to that title and

section the Secret Service is responsible for the protection of the President and Vice President of

the United States and their families, the President-elect and Vice President-elect and their

families, Presidential and Vice Presidential candidates, former Presidents, their spouses unless

remarried, and their minor children until the age of sixteen, and foreign heads of state and their

spouses visiting the United States. 18 U.S.C. § 3056.  The Secret Service is also charged with the

detection and arrest of individuals who violate criminal laws relating to coins, obligations, and

securities of the United States and foreign governments, electronic fund transfers, credit or debit

card fraud, false identification documents or devices, and fraud committed against certain

financial institutions, such as the Federal Deposit Insurance Corporation and the Resolution

Trust Corporation. Id.  The Secret Service is composed of a Headquarters staff, protective

divisions, the Uniformed Division, and over 100 field offices world wide. See Position

Description (attached at Tab 1).  The employees of the Secret Service include criminal

investigative, protective, administrative, professional, technical, and clerical personnel. Id.

The PARS is responsible for the development and management of the Secret Service

Directives System, the Secret Service Forms Program, and the Records Management Program.

See Position Description at Tab 1.  The PARS is also responsible for the creation, maintenance

and update of the organizational charts and functional responsibility statements for the Secret

Service offices. Id.  As a Management Analyst in the PARS, plaintiff was responsible for, among

other things: developing and evaluating new or revised directives, forms, and/or records retention

3

schedules; planning and conducting projects and studies to evaluate ways to improve organizational structure; and preparing reports and position papers supporting recommendations and proposals. Id.; See also ROI Tab 2 at 73.

A.  Performance Appraisal – Rating Year Ending June 30, 1991

On or about July 25, 1991, plaintiff received her performance appraisal for the rating year ending June 30, 1991. ROI Tab 2 at 74.  Plaintiff received a numerical rating of 300 on a scale of 0 to 400, which was classified as "Exceeds Fully Successful" Id.  After receiving the performance appraisal, plaintiff claimed that she had never received her job elements and advised her supervisor, John Machado, Branch Chief – PARS, that she would be filing an internal grievance. Id.

On or about August 9, 1991, plaintiff filed an internal grievance concerning her annual performance appraisal for the year ending June 30, 1991. See ROI at 12.

A fact finding was conducted and it was determined that plaintiff's rating would be rescinded and that she would be rated in 90 days after receiving her elements and standards. Plaintiff received a written response to her grievance on January 21, 1992.  See ROI at 15.

On October 1, 1991, Mr. Machado presented the plaintiff with elements and standards. Id.; See also Employee Performance Planning & Appraisal Form, ROI at 16.  Mr. Machado advised the plaintiff that a new rating period would begin that day and that she would receive a new rating in 90 days. See ROI Tab 2 at 77.  Mr. Machado also advised the plaintiff that she had been promoted to the GS-11 level. Id.; See also Standard Form 52, Request for Personnel Action, effective date October 6, 1991 (promoting plaintiff from GS-9 level to GS-11 level).

On October 16, 1991, plaintiff met with Rob Keefe, the Chief of MNO and Mr. Machado. ROI Tab 2 at 78.  Mr. Keefe spoke with the plaintiff about her dissatisfaction with her

employment with the Secret Service and in particular MNO. Hearing Transcript, volume IV at 189-193.  During this meeting, plaintiff advised Mr. Keefe that she did not trust her supervisors in MNO.  ROI Tab 2 at 78; Hearing Transcript, vol. 4 at 193:10-14.

On January 16, 1992, plaintiff was standing in the lobby of the Secret Service building speaking with another employee. ROI Tab 2 at 81.  Mr. Machado advised the plaintiff that he wished to speak with her. Id.  Plaintiff went to Mr. Machado's office where Mr. Machado provided plaintiff with her new performance appraisal for the rating period October 1, 1991 through December 31, 1991. Id.  Plaintiff received a final numerical rating of 270 on a scale of 0 to 400, which was classified as "Fully Successful."  ROI Tab 1 at 18.  This rating was prepared because plaintiff successfully grieved the appraisal she received in July 1991.  As a result, Mr. Machado was required to re-rate the plaintiff.  Plaintiff refused to sign the appraisal.  ROI Tab 2 at 81-82.

Plaintiff later returned to Mr. Machado's office where the Plaintiff and Mr. Machado discussed work related issues.  ROI Tab 2 at 82.  Plaintiff advised Mr. Machado that she wanted work that was "commensurate with [her] job level." Id.  Mr. Machado advised plaintiff that she would be assigned the Administrative Manual.  During this meeting, Mr. Machado also advised the plaintiff that her work schedule could be changed. ROI Tab 2 at 82; See also ROI Tab 3 at 111.

### B.  Water Main Incident

On January 14, 1992, an accident involving a water main occurred in Washington, D.C. which caused some areas to experience flooding. ROI Tab 1 at 79.  Plaintiff and two other PARS employees, allegedly believing that the Secret Service building was closed, left work early. Id. Their belief was objectively unreasonable because, in fact, the building was not seriously

affected by flooding and had not closed.  The next morning, Mr. Machado requested a written

statement from the three explaining why they left work several hours early.  ROI Tab 2 at 80.

Mr. Machado also advised the three that they were going to be charged as absent without leave

(AWOL) for the remainder of that workday.  Id. at 80.

Plaintiff was never charged as AWOL; instead, on January 24, 1992, plaintiff received a

memorandum of counseling in connection with this incident. ROI Tab 13 at 211.  See also Id. at

207; Hearing Transcript, Vol. 2 at 200:15-16.  The memorandum of counseling was later

expunged from plaintiff's records as a result of an administrative grievance filed by the plaintiff

on January 27, 1992.  See ROI Tab 13 at 200, 207.

C.  Performance Rating – Rating Year Ending June 30, 1992

On July 20, 1992, plaintiff received her performance rating for the year ending June 30,

1992.  ROI Tab 22 at 354.  Plaintiff received a 280 on a scale of 0 to 400, which is classified as

"Fully Successfully." ROI Tab 22 at 356.   Plaintiff received a 3 ("exceeds fully successful") on

all but the performance element for "interpersonal relations" for which she received a 1

("minimally successful").  The justification for this rating was that:

> "[e]mployee does not use tact and diplomacy in dealing with all levels of
> personnel both within and outside the division, and has a great deal of difficulty
> maintaining good working relationships with people with whom regular contact is
> essential.  Does not work well as a team member.  Is not sensitive to the feelings of others
> and is ineffective in dealing with conflict or other emotional situations.  In general, this
> employee has a negative effect on the moral and motivation of other employees.

ROI Tab 22 at 357.

D.  Plaintiff's Headaches

While working for the Social Security Administration prior to her employment with the

Secret Service in 1991, plaintiff claimed that she had developed heat triggered migraine

headaches as a result of her working environment.  ROI Tab 2 at 85; 94.  Plaintiff filed an injury

claim with the Office of Worker's Compensation Programs (OWCP). Id. This claim was

accepted by OWCP as an occupational disease claim. ROI Tab 17 at 225.  Plaintiff was then able

to seek reimbursement for any related sick leave usage through OWCP. Id. at 86.  When the

plaintiff came to work for the Secret Service, plaintiff continued to submit such claims through

OWCP.[2]  ROI tab 18 at 229; 234-237; 242-243.

Plaintiff's supervisor, John Machado, was aware that plaintiff had an approved worker's

compensation claim as plaintiff routinely wrote her worker's compensation claim number on her

leave slip. ROI Tab 3 at 112.  Despite Plaintiff's use of sick leave,

Mr. Machado believed that Plaintiff was still able to get her work done. Id.

Plaintiff left work early because of a migraine headache on only a few occasions while

employed by the Secret Service. Deposition of Anne Marie Mogenhan, Volume 2, at 5: 9-17;

ROI Tab 3 at 112.  Plaintiff appeared to regularly experience her illness following or preceding a

weekend or a regular day off.[3]  See May 12, 1993, letter; ROI Tab 18 at 231; 238.  There were

very few instances where Plaintiff left work because of illness.  Id.

E.  Plaintiff's Work Environment

From September 23, 1990 until October 4, 1992, Plaintiff worked in an open office

environment in room 670, 1310 L Street, NW, Washington, D.C., which was temperature

controlled.[4]  See May 13, 1993, letter.  Beginning on October 4, 1992, Plaintiff was transferred

to an individual office setting within room 670 complex.

---

2 Plaintiff indicated on the Standard Form 177, Statement of Physical Ability for Light Duty Work, submitted to the
Secret Service in connection with her employment application, that she could work under the following conditions:
extreme heat, dusty atmosphere, and some exposure to fumes, smoke, or gases.  ROI Tab 2 at 100.
3 Plaintiff participated in a compressed work schedule.  EEOC Hearing Testimony (Hearing Transcript) Vol.2 at 13-
14:22-5.
4 The area designation which relates to Plaintiff's work area is termed "open area (by copier)" on the December
report and "interior office (under the 6th floor)" on the May 1992 report.  See May 12, 1993, letter, attachments 1
and 2.

During this period of employment, the MNO division had two air quality measurements undertaken by Biospherics Incorporated on December 20, 1991, and again on May 14, 1992. See May 13, 1993, letter attachments 1 and 2.  These results showed the average temperature/humidity to be 77 degrees/26 percent as measured in the morning and afternoon for Plaintiff's work area (for the period 9/23/90 to 10/04/92).  Id.  The overall air circulation was determined to be fair. Id.  The office which Plaintiff occupied since October 4, 1992, had an average temperature of 76 degrees and a humidity reading of 24 percent for the same time period. Id.

Based on the recommendations presented in the Biospherics Inc. report of December 30, 1991, the building management implemented all the proposed remedies.5  May 13, 1993, letter. In 1988, all windows in the MNO division work area were covered with reflective transparent film to reduce the heating effect of the sun and to filter UV rays. *Id*.

When Plaintiff was reassigned to the Analytical Studies Branch, the Secret Service installed an air conditioning unit in Plaintiff's work area.  See May 12, 1993, letter; Hearing Transcript, vol. 2 at 199: 9-16.

 F.  Plaintiff's EEO Complaints

On February 28, 1992, Plaintiff filed a formal complaint of discrimination, which was assigned Treasury Department (TD) number 92-115.  On September 14, 1992, the Plaintiff filed another formal complaint of discrimination which was assigned TD number 92-1238.  Following formal investigations, a hearing was held before the EEOC on September 13-14, 1994, October 21, 1994, and October 24-25, 1994.  The accepted issues in this complaint were:

---

5 1310 L Street, NW was not owned by the Secret Service.  Plaintiff's Deposition, Vol. II at 25:17-18.

1. Whether the Agency subjected plaintiff to harassment and verbal abuse on the bases of her sex (female) and disability (migraine headaches) on August 9, 1991, October 1, 1991, October 16, 1991, and October 21, 1991;

2. Whether the Agency subjected plaintiff to harassment on the bases of her sex and disability on January 15, 1992, January 16, 1992, January 21, 1992, January 24, 1992, and in the beginning of February, 1992, by verbally harassing Plaintiff and threatening her with Absence Without Leave (AWOL);

3. Whether the Agency (management) subjected plaintiff to character assassination and harassment on the basis of her disability and in reprisal for her prior EEO activity

   a) since April 1, 1992, and continuing until October 1992, by telling individuals that she was difficult to work with;

   b) since April 1, 1992, and continuing until October 1992, by giving her an excessive amount of work;

   c) since April 1, 1992, and continuing until October 1992, by disclosing confidential information from her personnel files regarding her grievance and complaints;

   d) on August 27, 1992, by stating that she was not civil;

   e) on August 27, 1992, by threatening to remove her from the compressed work schedule;

   f) since August 27, 1992, and continuing until October, 1992, by requiring her to report to one of three people before leaving the office;

   g) since August 27, 1992, and continuing until October, 1992, by telling plaintiff she would be watched;

4. Whether the Agency discriminated against plaintiff on the bases of her sex and disability on January 16, 1992, by issuing her a performance appraisal rating of 270 for the rating period October 1, 1991 0 December 31, 1991; and

5. Whether the Agency subjected plaintiff to harassment on the basis of her disability and in reprisal for her prior EEO activity on July 20, 1992, by issuing her a rating of 280 on her annual appraisal and including derogatory comments on that appraisal.

See Findings and Conclusions at 2-3.

A hearing was held in this matter on September 13, 1994, September 14, 1994, October

21, 1994, October 24, 1994, and October 25, 1994.  Findings and Conclusions at 1.  The

9

Administrative Judge issued a decision concluding that the Agency did not discriminate against the Plaintiff. Id. at 13.  On July 18, 1995, the Department of the Treasury issued a final decision finding that there was insufficient evidence to support the plaintiff's claims of disability and sex discrimination and reprisal. Plaintiff appealed this decision to the EEOC.  On December 8, 1997, the EEOC issued a final decision affirming the Agency's decision.  See Defendant's Memorandum of Points and Authorities in Support of Motion to Dismiss, or in the Alternative, for Summary Judgment, Dunaway Declaration ¶ 5, Exhibit C.  Plaintiff subsequently submitted the instant lawsuit for filing in U.S. District Court on March 9, 1998. See Memorandum and Opinion Order at 5.

## ARGUMENT

I.      Standard for Summary Judgment

Summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986); Tao v. Freeh, 27 F.3d 635, 638 (D.C. Cir. 1994).  In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn there from, in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587.  The mere existence of a factual dispute, however, will not defeat summary judgment.  The non-moving party must show that the dispute is genuine and material to the case.  That is, the factual dispute must be capable of affecting the substantive outcome of the case and supported by sufficiently admissible evidence that a reasonable trier of fact could find for the non-moving party. Anderson, 477 U.S. at 247-48; Laningham v. U.S. Navy, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).  If the evidence favoring the

non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)). "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial [,] [and] [t]he moving party is 'entitled to judgment as a matter of law.'" Celotex Corp., 477 U.S. at 323 (citations omitted).

Mere conclusory allegations are not enough to survive a motion for summary judgment. Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993); Rowland v. Riley, 5 F. Supp. 2d 1, 3 (D.D.C. 1998); Benn v. Unisys Corp., 176 F.R.D. 2 (D.D.C. 1997).  Likewise, an affidavit which merely recites conclusory allegations will not defeat summary judgment. See Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990) ("The object of [Rule 56] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").

The District of Columbia Circuit has made plain that summary judgment is appropriate in a discrimination suit where the plaintiff fails to present sufficient evidence to establish a prima facie case or to cast doubt in the mind of the fact finder that the reasons asserted by defendant to justify the employment action were pretextual See Mungin v. Katten, Muchin & Zavis, 116 F.3d 154 (D.C. Cir. 1997).

    1.    Allocations of Burdens and Orders
          of Proof under Title VII and the ADA.

Plaintiff appears to bring this case as both an intentional disability discrimination case and a failure to accommodate claim. The standard of proof in each is slightly different.

          a.   Standard of Proof in an Intentional Disability Discrimination Case.

In the District of Columbia Circuit, the order and allocations of the burdens of proof in cases brought under Title VII have been applied to cases brought under the Rehabilitation Act, 29 U.S.C, §701.  Barth v Gelb, 2 F 3d 1180, 1186 (D.C., Cir, 1993), cert den. 511 U.S. 1030 (1994);

see also McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981).

In Aka v. Washington Hospital Center, 116 F3d 876 (D.C. Cir, 1997), vacated on other grounds pending rehearing en bane, 124 F 3d 1302 (1997), the D C Circuit found that the Rehabilitation Act and the ADA are substantially similar and, accordingly, ". . .the application of the McDonnell Douglas framework to . . . ADA-based challenges. . . is appropriate." Id at 885-86. The decision on rehearing was the same. Aka v. Washington Hospital Center, 156 F, 3d 1284 (D.C. Cir. 1998). See also Marshall v. Federal Express, 130 F.3d 1095 (D.C. Cir 1997). Accordingly, the McDonnell Douglas Corp. v. Green, paradigm is the one under which the "active discrimination" claims in this action should be adjudicated.

As discussed in Barth, supra, plaintiff has the initial burden of producing sufficient evidence to support a prima facie case of discrimination.  In a disability discrimination case, plaintiff must show that he is a "qualified handicapped person" who, with "reasonable accommodation can perform the essential functions of the position in question. 29 C.F.R. § 1613.792(f)."  If the plaintiff establishes a prima facie case, the burden then shifts to the defendant who must produce evidence of an "articulable non-discriminatory reason for the challenged action."  If defendant produces a reason, the plaintiff then bears the "ultimate burden" of showing it is "pretextual and that intentional discrimination had in fact occurred." Barth v. Gelb, 2 F.3d 1185 (citing Burdine 450 U.S. at 252-6).

2.  **Burden of Proof in a Failure to Accommodate Case**

As the D.C. Circuit's decision in Aka, supra, states, a claim that the employer failed to afford a person a reasonable accommodation under the ADA is subject to a different analysis than the McDonnell Douglas framework used for a disparate treatment claim. As the Court explained,

12

>The ADA prohibits discrimination on the basis of disability, and defines such discrimination to include not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.   42U.S.C §12112(b)(5)(A).

Id. at 15.

The Court continues to say that, first, the person must be an "otherwise qualified individual." In other words, plaintiff here must show that she is (1) a qualified individual with a disability under the ADA.  The ADA defines that term as someone who "with or without reasonable accommodation can perform the essential functions of the employment position that such individual holds or desires" 42 U.S.C. §12111(8) and the reasonable accommodation must be made to the "known physical or mental limitations." 42 U.S.C. § 12112(b)(5)(A).

The Supreme Court has recently issued two opinions which have clarified the standards governing who can claim protection under the ADA. The Court held that in order to be qualified as having a disability, impairment must substantially limit one or more major life functions of an individual. See Sutton v. United Air Lines, Inc. 1999 WL 407488 (U.S.); see also Murphy v. United Parcel Service, 1999 WL407472 (U.S.) (copies attached). The Court found that this requires that the substantial limitations actually and presently exist. "A disability exists only where an impairment substantially limits a major life activity, not where it 'might'  'could' or 'would'  be substantially limiting if mitigating measures were not taken," Sutton supra at 7. Further, a person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that "substantially limits" a major life activity. The Court goes on to clarify that a person whose physical or mental impairment is corrected, still has an impairment, but if the impairment is corrected, it does not substantially limit a major life activity. Id. at 8.  The regulations also provide that temporary disabilities do no qualify for protection

13

under the ADA. 29 C.F.R. § 1630.2(j)(2)(ii).

> a. Plaintiff's Claim of Intentional Disability Discrimination Fails.

Plaintiff alleges that the Agency created a hostile work environment and discriminated against her based upon her physical disability (heat triggered migraine headaches).   Plaintiff, however, is not an individual with a disability.

Under the Rehabilitation Act, an "individual with a disability" is "any person who:

> (i)  has a physical or mental impairment which substantially limits one or more of such person's major life activities;
>
> (ii) has a record of such impairment; or
>
> (iii) is regarded as having such an impairment."

29 U.S.C. §705(20)(B); 29 C.F.R. §1614.203(a)(1); 45 CFR §84.3(j) (2001).[6]  A physical impairment, the type of impairment relevant to this case, is further defined under the regulations as "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; . . . . " 29 C.F.R. §1614.203(a)(2)(i); 45 C.F.R. §84.3(j)(2)(i).

However, having a physical impairment does not make one disabled for purposes of the Rehabilitation Act.  Plaintiff must also demonstrate that the impairment substantially limits a major life activity.  29 C.F.R. §1614.203(a)(1)(i); 45 C.F.R. §84.3(j)(1)(i).  Major life activities are further defined as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. §1614.203(a)(3); 45 C.F.R.

---

[6]The EEOC's Rehabilitation Act regulations for the federal sector are found at 29 C.F.R. §1614.203.  The Department of Health and Human Services has also promulgated regulations for federally-funded programs. 45 C.F.R. Part 84.  Where possible, citations to both have been used as the United States Supreme Court has stated that the EEOC has not been authorized to promulgate regulations interpreting the term "disability" in either the Rehabilitation Act or the American with Disabilities Act.  *Toyota Motor Manuf., Kentucky, Inc. v. Williams*, ___ U.S. ___, 122 S.Ct. 681, 689 (2002);  *Sutton v. United Air Lines, Inc.* 527 U.S. 471, 480 (1999).

§84.3(j)(2)(ii).  For the purposes of the American with Disabilities Act (ADA)[7], "substantially limits" means "unable to perform a major life activity that the average person in the general population can perform"; or "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(2001).

In applying these standards to Plaintiff, the Agency does not dispute for the purposes of summary judgment whether Plaintiff has the physical impairment of heat triggered migraine headaches.  However, the Agency does not believe that Plaintiff has or can demonstrate that her heat triggered migraine headaches substantially limit Plaintiff in a major life activity.

Plaintiff claims that when she suffers from a bad migraine, she has "no coordination. . .It affects [her] eyesight.  It affects her ability to eat . . It affects [her] hearing.  It affects [her] ability to dress. . .[She] can't concentrate.  [She has] slurred speech."  Plaintiff's Deposition, Vol. II at 50-51:22-10.   Plaintiff claims that these symptoms prevent her from working.  Plaintiff's Deposition, Vol. II at 7:17-21.

However, when Plaintiff is not experiencing a migraine, she can eat, sleep, work, socialize and feels pain free.  See Good and Bad Day Comparison (attached).  Plaintiff has also testified that she is able to manage her migraine condition using a number of techniques including biofeedback. Id.; Plaintiff's Deposition, Vol. II at 6-7: 15-9.  What is more, Plaintiff testified at her administrative EEO hearing that while employed with the Resolution Trust Corporation, Plaintiff had not experienced any heat triggered migraines.  Hearing Transcript,

---

[7]The regulations implementing the Rehabilitation Act promulgated by the Department of Health and Human Services and the EEOC's Rehabilitation Act regulations for the federal sector do not appear to define the term "substantially limits".

Vol. 2 at 71: 7-14.

When the major life activity at issue is working, a plaintiff must establish she was restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person.  29 C.F.R. § 1630.2(j)(3).  In this case, plaintiff alleges that the temperature in her workplace rendered her unable to work because it triggered her headaches. However, Plaintiff has stated that she was able to work through some of her headaches. Plaintiff's Deposition Vol. I at 65:17-22; Vol. II 6:11-14.  In fact, Plaintiff was able to produce high quality work and complete her assignments in a timely fashion.  Hearing Transcript, Vol. 3, at 70-71:16-6.

Moreover, it appears that Plaintiff had no trouble working for the Baltimore Orioles on many days she claimed to be suffering from migraine headaches.  Plaintiff's Deposition, Vol. I at 65-66:17-6 (stating that she normally did not call in sick to the Orioles).   What is more, on several occasions, despite suffering from a headache of such severity that she could not come to work at the Secret Service, Plaintiff was able to go to work for the Baltimore Orioles.  See Secret Service leave slips and corresponding Baltimore Orioles time cards (attached).  Therefore, Plaintiff cannot claim that a class of jobs has been foreclosed to her as a result of her impairment and that her claim of substantial impairment in a major life activity, i.e., her ability to work, fails.

Accordingly, Plaintiff has not shown, and has indicated no means of showing, that she is an "individual with a disability" as defined by the Rehabilitation Act as her impairment does not substantially limit a major life activity.  Therefore, Plaintiff's claim of hostile work environment based upon physical disability (heat triggered migraines) and her discrimination claim with respect to physical disability (heat triggered migraines) should be dismissed.

**2.** **Plaintiff did not have a record of a substantial impairment that prohibited her from performing a major life activity.**

Plaintiff asserts she has a record of having an impairment that substantially limits one or more of her major life activities.  See Complaint at 3 ¶12.  Plaintiff appears to be claiming that she has a record of being substantially impaired from the major life activity of working because she was receiving compensation from the Department of Labor for days she was unable to work due to a migraine headache.

In Sutton v. United Air Lines, 527 U.S. 471 (1999), the Supreme Court stated that:

> To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs.  Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

Id. at 491-92.  This language in Sutton has led courts to conclude that a plaintiff must produce some evidence that she was precluded from performing a substantial class of jobs to show that she was substantially limited in the major life activity or work.  See Duncan v. WMATA, 240 F.3d 1110, 1114 (D.C. Cir. 2001) (stating that the ADA requires a plaintiff to produce some evidence that the total number of jobs that remain available to the plaintiff is sufficiently low so as to preclude him from working in a class of jobs or range of jobs).

Here, the Plaintiff has failed to proffer any evidence to show that she was excluded from being able to perform a broad class of jobs.  Plaintiff was able to perform her job with the Secret Service as well as her job with the Baltimore Orioles.  "[T]he fact that an individual has a record of being a disabled veteran, or of disability retirement, or is classified as disabled for other purposes does not guarantee that the individual will satisfy the definition of 'disability' under the Rehabilitation Act."  Kalekiristos v. CTF Hotel Management Corp., 958 F. Supp. 641, 656 (D.D.C. 1997), aff'd.  132 F.3d 1481 (D.C. Cir. 1997).  Plaintiff's Department of Labor claim,

without more, is insufficient to meet her burden of production, and the Defendant is entitled to summary judgment on this issue.

### 3. **The Defendant did not regard the Plaintiff as Having an Impairment that Substantially Limits a Major Life Activity.**

Plaintiff also contends that she is entitled to protection under the Act because she was "regarded as" having an impairment that substantially limits a major life activity. 8 Plaintiff does not indicate why she believes that the Defendant regarded her as disabled.  The Defendant can only guess it is because the Defendant processed Plaintiff's OWCP claims and approved Plaintiff's requests for sick leave.

Mr. Machado believed that Plaintiff's work was professional and timely and that her only problems were in communication and interpersonal relation skills.  ROI at 112.  Furthermore, Mr. Machado believed that the Plaintiff was able to get her work done in spite of her use of leave. Id. at 112.  Based upon these statements, the Defendant did not regard the Plaintiff as substantially disabled in the major life activity of working or any other major life activity for that matter.

### 4. **Plaintiff was not a qualified person with a disability, nevertheless the Agency accommodated her.**

Plaintiff does not meet the criteria for a qualified individual with a disability.  *See infra Section A (1).*  Nevertheless, the Agency reasonably accommodated Plaintiff.

Plaintiff did not request an accommodation.  Plaintiff asserts that she complained to Mr. Machado that her workplace was too hot and that these complaints were requests for accommodation of a disability.  However, Plaintiff admits that her only specific request to Mr.

---

8 There are two ways in which an individual may fall within the statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities.  Sutton, 572 U.S. at 489.  These misperceptions often result from "stereotypical assumptions not truly indicative of individual ability." Id.

Machado with regard to accommodation was "telling him to make [the office space] cooler." Plaintiff's Deposition Vol. I at 74:15-21.  Plaintiff also admits that several other people in the office also complained about the heat.  Id. at 69.  Plaintiff concedes that she made no formal record of her request and did not put her request in writing.  Plaintiff's Deposition, Vol. I at 76:6; 14.

It appears that Plaintiff assumed that Mr. Machado understood her complaints about the temperature of her office space to be a request for accommodation under the Rehabilitation Act even though Plaintiff readily admits that "everybody else [was] having the same problem."  Id. at 76:1-2.  Plaintiff is seeking to have her complaints about the office temperature transformed into a request for accommodation for a disability.   The Secret Service should not be held liable for an accommodation that was never requested.

Regardless of whether the Plaintiff adequately informed the Secret Service of her migraine condition, the Secret Service accommodated the Plaintiff.  Plaintiff admits that after she, and other employees, complained to Mr. Machado about the heat in the building, "huge fans" were brought in to try to cool off the area and that the "division chief [had] an all-hands meeting to say we're working on it; we know it's a problem; we're getting it resolved." Plaintiff's Deposition, Vol. I at 69:5-8; 76:1-6.

Moreover, on or about December 20, 1991, Biospherics Incorporated conducted an indoor air quality assessment at 1310 L Street, NW, Plaintiff's workplace.  See May 12, 1993 letter, attachment 2 (December 30, 1991, letter).  This survey noted that the temperature and relative humidity throughout Plaintiff's workspace were within suggested guidelines.  *Id*.

Finally, in an effort to reduce the heat in Plaintiff's workspace, the Secret Service installed an air conditioning unit for the benefit of the Plaintiff.  Plaintiff's Deposition Vol. I at

79:13-16.  Plaintiff estimated that this occurred in October of 1992. Id. at 79:22-23.

The record does not reflect, and Plaintiff will be unable to produce any evidence that the Agency did not accommodate her.  In fact, the record reflects that the Agency made numerous attempts to provide Plaintiff with a cooler work environment, the only accommodation she requested.  The Agency installed five to six foot fans, conducted air quality studies, and finally installed an air conditioning unit for the benefit of the Plaintiff.  Accordingly, if Plaintiff's claims of discrimination and hostile work environment based on physical disability (heat triggered migraines) are not dismissed because Plaintiff is not a qualified individual with a disability, they should be dismissed because the Agency accommodated Plaintiff.

## II.    Plaintiff Cannot Make Out a *Prima Facie* Case of Discrimination or Retaliation

Here, Defendant is entitled to summary judgment, because Plaintiff cannot make out a *prima facie* case of discrimination or retaliation with regard to her several of her claims.

1.  Plaintiff Cannot Point to Any Circumstances Giving Rise to an <u>Inference of Sex or Disability Discrimination</u>.

Plaintiff alleges that the Secret Service discriminated against her on the basis of her sex and disability when Plaintiff received a performance appraisal with a rating of 270 for the rating period October 1, 1991 through December 31, 1991.[9]  See Complaint at 4 ¶ 19-22.  Defendant is entitled to summary judgment with regard to this claim, because Plaintiff cannot point to any evidence in the record giving rise to an inference of discrimination.

For example, Plaintiff cannot show that similarly-situated employees outside her protected class were given preferential treatment.[10]  In order to satisfy this test, Plaintiff must

_____

9 For purposes of this argument only, the Defendant assumes that the plaintiff is a qualified individual with a disability.
10 Demonstrating that similarly situated employees were treated differently is one possible method by which a

prove that all of the relevant aspects of her employment situation were "nearly identical" to those of the employees who she alleges were treated more favorably.  See Barbour v. Browner, 181 F.3d 1342, 1345 (D.C. Cir. 1999); Mugin v. Katten, Muchin & Zavis, 116 F.3d 1549, 1554 (D.C. Cir. 1997); Neuren v. Adduci, Mastriani, Meeks & Schill, 43 F.3d 1507, 1514 (D.C. Cir. 1995). Here, Plaintiff cannot demonstrate that other employees rated by Mr. Machado (or in the Secret Service for that matter) received evaluations under circumstances comparable to the Plaintiff.

This rating was issued because Plaintiff had successfully grieved her July 1991 appraisal on the grounds that Mr. Machado had failed to present her with performance elements and standards in advance.  ROI at 14-15.  As a remedy, Mr. Machado was required to substitute that annual appraisal with a rating based on Plaintiff's performance for the 90 day period from October 1, 1991 through December 31, 1991. Id.

In short, there is no evidence that any similarly situated employee of a different gender (or non-disabled employee) was treated more favorably than the Plaintiff.  Nor is there any other evidence in the record giving rise to an inference of discrimination.  Accordingly, Plaintiff has failed to establish a *prima facie* case of discrimination with respect to this rating and this claim should be dismissed.

2.  Plaintiff Cannot Establish a *Prima Facie* Case of Retaliation.

Plaintiff also asserts that the Secret Service retaliated against her for her participation in the EEO complaint process when it created a hostile work environment for Plaintiff between October 1991 and January of 1994.  Complaint at 7 ¶ 39.  Defendant is entitled to summary judgment with regard to part of this claim, because Plaintiff cannot make out a *prima facie* case of retaliation.

---

plaintiff can satisfy the third prong of the *prima facie* case, although it is not necessarily the only method.  See Stella v. Mineta, 284 F.3d 135, 144-45 (D.C. Cir. 2002) (citing McDonnell Douglas, 411 U.S. at 802).

Several of the employment actions at issue took place long before Plaintiff engaged in EEO activity.  It is undisputed that Plaintiff first met with an EEO Counselor in January 1992. See EEO Counseling Report, ROI at 19.  However, several of the acts of alleged retaliation took place in October 1991 (or in the case of the alleged lowered evaluation on January 16, 1992). See Complaint at 8-9.  As such, it cannot be said that these alleged acts were caused by retaliatory animus because Plaintiff had yet to participate in the EEO complaints process.  As such, Plaintiff cannot make out a *prima facie* case of retaliation with regard to these claims.

III.   The Defendant Had Legitimate, Non-Discriminatory Reasons for Its Actions, and Plaintiff Can Produce No Evidence of Pretext.

Even assuming, arguendo, that plaintiff could make out a prima facie case of discrimination based on disability, gender, and/or retaliation, the Defendant still would be entitled to summary judgment, because it had legitimate, non-discriminatory motivation for its actions.

A.  Plaintiff's January 1992 Rating

The Secret Service has several reasons for giving the Plaintiff a performance rating of 270 ("Fully Successful") on a scale of 0 to 400, in January 1992, none of which can be said to be discriminatory.11  First, plaintiff received a "2" in the area of "Communication" because her relationships with other branch employees, particularly Tad King, Anne Parker, and John Machado, had deteriorated.12  ROI at 110-11; Hearing Transcript, Vol. 3 at 205-212; Hearing Transcript, Vol. 4 at 55.

---

11 In July 1991, the Plaintiff received a rating of 300.  ROI at 10.  Plaintiff received a 4 in "Administration" and a 3 in "Communication".  ROI at 10, 18.  Plaintiff successfully grieved this appraisal, and Mr. Machado was required to re-rate the Plaintiff based on Plaintiff's performance for the 90 day period from October 1, 1991, through December 31, 1999.  ROI at 14-15.

12 Plaintiff had received a 3 in "Communication" in her July 1991 evaluation. ROI at 10, 18.

Second, plaintiff received a "3" in the area of "Administration" because plaintiff had been promoted to the GS-11 level during this rating period, and Mr. Machado expected a higher level of work from the plaintiff at this level.  Hearing Transcript, Vol. 3 at 205.[13]  Further, there was a lack of available work which prevented Mr. Machado from assigning Plaintiff the type of work that could have led to a higher rating.  Hearing Transcript, Vol. 4 at 58; Vo1. 3 at 205; Machado Deposition at 117:11-15.

Plaintiff's July 1991 rating had been based upon her successful completion of the correspondence manual in a short period of time.  Machado Deposition at 109-110.  Mr. Machado felt that this represented an "outstanding effort."  Id. Over the course of the 90 day appraisal period, Mr. Machado believed that while plaintiff had done nothing wrong, there was "just nothing [that] jumped out as being exceptional."  Id. at 110:4-5.  Plaintiff's rating of "Fully Successful" was a fair assessment of Plaintiff's performance during this limited rating period. Hearing Transcript, Vol. 3 at 203:5-7.

B.  The Plaintiff's July 1992 Rating

The Secret Service has several reasons for giving the plaintiff a rating of 280 ("Fully Successful") on a scale of 0 to 400, in July 1992, none of which can be said to be discriminatory. First, plaintiff received a 1 in the area of "Interpersonal Relationships" which Mr. Machado considered generous in light of the complaints about plaintiff's ability to get along with others in the Secret Service.  ROI at 105-106, 111-112, 159-60, 170; Hearing Transcript, Vol. 3 at 207-12; Hearing Transcript, Vol. 4 at 60-64, 71, 136-38; Hearing Transcript, Vol. 5 at 114-115; Machado Deposition at 124-128.  Second, plaintiff received a 3 in all other rating elements because while

---

13 Plaintiff had received a 4 in "Administration in her July 1991 evaluation.  ROI at 10, 18.  Mr. Machado testified that he gave plaintiff this rating because as a new employee, she quickly completed revisions to the correspondence manual, a major project.  Hearing Transcript Vol. 3 at 203-205; ROI at pg. 11.  Plaintiff had completed this project before the 90-day period for which Mr. Machado was required to re-rate her.

her performance in these areas was good, it was not outstanding.  ROI at 58; Hearing Transcript,

Vol. 4 at 64-65, 68, 71, 116-20, 158-60.  Moreover, as a result of plaintiff's promotion during

this rating period, Mr. Machado expected a higher quality work product from plaintiff at this

level.  Hearing Transcript, Vol. 3 at 205.

The defendant has articulated legitimate, non-discriminatory reasons for its actions and

the burden is on the plaintiff to show by a preponderance of evidence that these articulated

reasons are a mere pretext for discrimination.  McDonnell Douglas, 411 U.S. at 804.  The record

in this case does not offer any evidence or any possible factual basis on which the plaintiff might

argue pretext.

IV.     Hostile Work Environment

Plaintiff asserts that the defendant created a hostile work environment for plaintiff

between October 1991 and January 1994, on the basis of her gender, disability, and in retaliation

for her participation in the EEO complaints process.14  Complaint at 7-8.  As previously

discussed, plaintiff is not a qualified individual with a disability and therefore this portion of her

claim of hostile work environment fails for this reason alone.  With regard to plaintiff's gender

and retaliation claims, even accepting plaintiff's factual allegations as true, the plaintiff cannot

prevail.

To establish a *prima facie* case of hostile work environment, plaintiff must show: (1) she

is a member of a protected class; (2) she was subject to unwelcome harassment; (3) the

harassment occurred because of her gender, disability, or in retaliation for her EEO activity; (4)

that the harassment affected a term, condition, or privilege of her employment; and (5) her

---

14 While Plaintiff does not cite to any incidents which occurred after August 1992, to the extent that plaintiff is
seeking to make such claims, plaintiff should be precluded from doing so as she has failed to exhaust her
administrative remedies with regard to any claims beyond August 1992.  See ROI at 7-8; 42-45;62-63.

employer knew or should have known about the harassment, but failed nonetheless to take steps to prevent it.  Lester v. Natsios, 290 F. Supp.2d 11, 11 (D.D.C.). n2

However, mere abusive behavior in itself is not actionable.  See Barbour v. Browner, 337 U.S. App. D.C. 50, 181 F.3d 1342, 1347-48 (D.C. Cir. 1999).  Instead, to be sufficiently "hostile" under the auspices of a Title VII hostile work environment claim, the workplace must become permeated with "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment.  Id.  Random or intermittent, offensive remarks are not commonly recognized as being severe enough to constitute a hostile working environment.  See Glovinsky v. Cohen, 983 F. Supp. 1, 4 (D.D.C. 1997); see also Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001).  "Standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1988).  This high threshold serves to "filter out complaints attacking the ordinary tribulations of the workplace such as the sporadic use of abusive language, gender related jokes, and occasional teasing." Id.

Instead, the alleged harassment must be so severe or pervasive that it has the effect of altering the terms, conditions, or privileges of employment. Barbour, 181 F.3d at 1347-48.  In determining whether the alleged harassment rise to this level, courts consider (1) the frequency of the harassing conduct; (2) its severity; (3) whether it is physically threatening or humiliating; and (4) whether it unreasonably interferes with an employee's work performance. Harris v. Forklift Sys., Inc. 510 U.s. 17, 23 (1993); Lester, 290 F. Supp.2d at 22.

The plaintiff's hostile work environment claim cannot be sustained because despite the sheer number of incidents of which plaintiff complains, none of her allegations give rise to an inference of discrimination by the defendant on gender, disability, or retaliation.  As the Second

Circuit has explained:

> Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude.  It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage of correlation to the claimed ground of discrimination.  Otherwise, the federal courts will become a court of personnel appeals.

Bryant v. R.L. Brownlee, Acting Secretary of the Army, 265 F. Supp. 2d 52, 63 (D.D.C. 2003) (quoting Alfano v. Costello, 294 F.3d 365, 377 (2d Cir. 2002)).  Thus, plaintiff must produce evidence that she was discriminated against because of her status.  Here, with the exception of plaintiff's claims that Mr. Machado stated that he would increase her workload to keep her from filing complaints and that her EEO complaint was passed through the agency's computer system, which will be discussed below, none of the events described in plaintiff's complaint have any gender, disability, or retaliatory related overtones. They are completely neutral with regard to these protected classifications.

    Moreover, the record actually suggests that Plaintiff's strained relations with her co-workers and supervisors resulted from job-related tensions or personality conflicts caused by the plaintiff.  Ms. Parker, for example, stated that Plaintiff is "abusive when she speaks to you" and that "trying to communicate with her just didn't work." ROI at 160.  Mr. King stated that plaintiff "occasionally would be what [he] considered to be rude in dealing with other employees in both the Branch and other Service offices . . ." ROI at 147.  Mr. Sleasman stated that "if Ann feels that she is in control of a situation, she is fine, but if she does not have control, she feels threatened and becomes rude and presents a negative attitude to those around her.  ROI at 134.  Mr. Keefe stated that during the October 16, 1991, meeting, plaintiff advised Mr. Keefe that she "didn't trust the chain of command."  ROI at 124.  Mr. Machado stated that he had "lost all faith in [his] ability to deal with Anne Mogenhan." ROI at 112.  Plaintiff cannot state a claim with

regard to her co-worker's or even her supervisor's dissatisfaction with her where it is based on factors other than discriminatory animus.  See Alfano, 294 F.3d at 378. ("Alfano makes much of Brown's admission at trial that he disliked Alfano personally, but there is no indication that he disliked her because she was a woman."); Morris v. Oldham City, Fiscal Court, 201 F.3d 784, 791 (6th Cir. 2000) ("Personal conflict does not equate with discriminatory animus," (quoting Barnett v. Dept. of Veterans Affairs, 153 F. 3d 338, 342-43 (6th Cir. 1998)).  Griffin, 103 F. Supp. 2d at 315 (dismissing hostile work environment claim where "it is more likely that the hostility plaintiffs encountered 'largely reflected a clash of personality rather than discriminatory animus'" (citations omitted).

The allegations with respect to Mr. Machado that he told Plaintiff that she was being given an increased workload to keep her "too busy to file complaints" cannot be said to be discriminatory or retaliatory.  Plaintiff alleges that this occurred on January 16, 1992.  Complaint at 8, ¶d.  However, plaintiff had not filed her first complaint of discrimination until February 28, 1992.  ROI at 8.  Therefore, it cannot be said that Mr. Machado was retaliating against the plaintiff.  At best, these comments could reasonably construed as laments about Plaintiff's propensity to complain when things were not going her way.  Further, it is undisputed that Plaintiff requested additional work from Mr. Machado and never complained to him that she was over worked.  ROI at 110-111; Hearing Transcript, Vol. 2 at 200:1-4.

With regard to plaintiff's complaint about passing her EEO complaint through the computer system, this is also does not give rise to an inference of discrimination based on gender, disability, or retaliation.  Plaintiff admits that her office computer was not hooked up to a printer.  In fact, no one in the MNO Division had an individual printer.  Machado Deposition at 45:8.  In order to print a document, Plaintiff would need to use a computer that was hooked up to

a printer. Hearing Transcript at 274.  Plaintiff claims that as a result, any document that she

printed would be duplicated and sent through the e-mail system and anyone who used that

computer could read that document.  Id.  However, this would occur with any that document she,

or anyone else for that matter, printed from that computer.15  Plaintiff cannot show that she was

singled out or treated differently than any other employee.  This is insufficient to state a claim

under Title VII.

Moreover, the alleged harassing behavior fails to provide a basis for a claim under Title

VII because it is not sufficiently severe, pervasive or extreme to rise to the level of an actionable

hostile work environment.  Most of the alleged instances of harassment can best be characterized

as "ordinary tribulations of the workplace" that are not actionable.  Faragher, 524 U.S. at 788.

Plaintiff complains that she was verbally abused and harassed on October 1, 16, and 22, 1991; on

January 16, 1992, she was told she would be given an increased work load to "keep her mouth

shut" and "too busy to file complaints"; that her supervisors made unfounded complaints about

her work, that her supervisors directed unfounded and unjustified verbal insults at her in front of

other employees; that on April 1, 1992, her workload was increased; that on April 6, 1992, she

was threatened with Absent Without Leave; that on April 7, 1992, a supervisor became volatile

towards her; that she was given a lowered appraisal on July 20, 1992; on August 27, 1992, her

complaint was passed through the e-mail system; and that on August 27, 1992, Mr. Machado

said he would be watching her16.  Complaint at 8-9.  But of course, Title VII is not a "general

civility code," Faragher, 514 U.S. at 788, and "many bosses are harsh, unjust, and rude," Alfano,

294 F.3d at 377.  The incidents of which plaintiff complains are too mild and too common in

---

15 Mr. Machado stated that a back up file is automatically created and stored on the hard drive of the computers.
ROI at 117.  This does not indicate that someone had taken Plaintiff's information only that she had used the
computer. Id.  The back up file could only be erased with the Norton Utilities Program.
16 Plaintiff's complaints concerning her appraisals are discussed above and do not constitute actionable claims
under Title VII.

many workplaces to constitute "an abusive working environment" that provides a basis for a Title VII claim.  See Faragher, 524 U.S. at 787-88.

Overall, taking plaintiff's various allegations together, plaintiff has failed to establish the existence of a workplace "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 78, 140 L. Ed. 2d 201, 118 S. Ct. 998 (1998) . (citation omitted).    Although plaintiff may have subjectively felt harassed by defendant, the evidence does not substantiate the presence of "extreme" conduct that "amounts to a change in the terms and conditions of employment." Faragher, 524 U.S. at 788. n13  Accordingly, plaintiff's claim for discriminatory and retaliatory hostile work environment fails and summary judgment should be granted in favor of the defendant.

### Conclusion

For the reasons set forth above, the defendant Tom Ridge, Secretary of the Department of Homeland Security, is entitled to summary judgment on all claims asserted by plaintiff Anne Marie Mogenhan in this action.  There are no genuine issues of material fact.  This action should be dismissed in its entirety with prejudice.

Respectfully submitted,


_____
KENNETH L. WAINSTEIN
D.C. Bar No. 451058
United States Attorney


_____
R. CRAIG LAWRENCE
D.C. Bar No. 171538
Assistant United States Attorney


_____
CHARLOTTE A. ABEL
D.C. BAR #388582
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-2332