**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Ann Marie Mogenhan, ) | Civil Action No. 98-0817 (JDS) |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| Michael Chertoff, Secretary ) | |
| Department of Homeland Security ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Plaintiff Ann Marie Mogenhan (Plaintiff) initiated the above-captioned lawsuit on the basis that she was discriminated against due to her gender and disability. This matter comes before the Court on Defendant Michael Chertoff, Secretary of Department of Homeland Security's (Defendant), Motion for Summary Judgment[1]. On April 29, 2008, the Court held a hearing and heard arguments from the parties. After the hearing, the Court deemed the matter fully submitted and is prepared to rule.

---

[1] Plaintiff's lawsuit concerns her employment with the United States Secret Service which was subsequently transferred to the Department of Homeland Security. Michael Chertoff was confirmed as the Secretary of Homeland Security and is substituted in the place of former Secretaries pursuant to Fed R. Civ. P. 25(d)(1).

1

# I. FACTS

In September 1990, Plaintiff, a white female, became employed by the Department of Homeland Security, formerly the United States Secret Service (USSS), as a Management Analyst (GS-343-9). She was employed by the USSS until 1994. Complt. ¶ 8. She alleges that she has been subjected to sex discrimination and retaliation in violation of the Title VII of the Civil Rights Act of 1964, and that she was discriminated against for engaging in Equal Employment Opportunity activities. Amended Complaint (Complt.) ¶¶ 3, 32. Further, Plaintiff amended her original complaint to include claims under the American's with Disabilities Act (ADA) and the Rehabilitation Act of 1973. Complt. ¶ 4.

Prior to her employment at USSS, Plaintiff worked at the Social Security Administration (SSA). While at SSA, she claimed she developed heat triggered migraine headaches as a result of her working environment (Defendant's Statement of Material Facts not in Genuine Dispute (SMF) ¶ 33). Plaintiff filed an injury claim at the Office of Workers Compensation Programs (OWCP) and was then able to seek reimbursement for any sick leave. Id. at 34-36. While employed at the USSS, she continued to submit claims to OWCP. Id. at 37.

Plaintiff claims to have experienced heat triggered migraine headaches since March of 1985. *See* Record of Investigation p. 85. Plaintiff treats her migraines with medication and bio-feedback. Id. Plaintiff generally alleges that the conditions in her USSS work area were too hot and had poor ventilation which triggered her migraine headaches. Complt. ¶ 17. Plaintiff also alleges that the USSS failed to reasonably accommodate her. Id. (*See also* Plaintiff's Statement of Disputed Material Facts (PSDMF) ¶ 22-35).

In addition, Plaintiff alleges that she was discriminated against on the basis of her gender.

Complt. ¶ 22.  Plaintiff points to certain performance appraisals which she claims were lower as a result of her EEO Complaint and her gender. Complt. ¶¶ 29-31.  In 1991, Plaintiff received 300 out of 400 on her appraisal and was classified as "Exceeds Fully Successful." SMF ¶ 3.  In Plaintiff's subsequent appraisals she received a 270 and 280 out of 400, all classified as "Fully Successful". Id. at ¶¶ 17, 31.   In 1992, she received a 3 ("Exceeds Fully Successful") on all performance elements except for "interpersonal relationships" on which she received a 1 ("Minimally successful"). Id. at ¶ 32.   Plaintiff also makes several general allegations of mistreatment against her by her supervisor Mr. John  Machado (Machado).

Plaintiff alleges that out of the six employees evaluated by Machado, females generally received the lowest score. PSDMF ¶ 71.   Plaintiff also points out that she was never written up, received any reprimands, nor had any disciplinary actions taken against her[2]. PSDMF  ¶78.

Plaintiff sought EEO counseling on January 14, 1992 and August 7, 1992 alleging that she was discriminated against by the USSS. *See* Findings and Conclusions, (EEOC No.s 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X and 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X), Equal Employment Opportunity Commission (EEOC), Kathryn Brown, Administrative Judge p. 1.  On February 28, 1992 and September 14, 1992  Plaintiff  filed two formal complaints alleging discrimination with the EEOC. Id.   A hearing was held in front of the EEOC on September 13, 14 , 1994 and October 24, 25, 1994. Id.   After the hearing, the Administrative Law Judge issued an opinion finding that the Treasury Department did not discriminate against the Plaintiff. Id. at 13.   The Department of the Treasury (DOT) issued a final

---

[2] The record indicates that in 1992, Plaintiff was apparently warned that she would be charged as AWOL regarding an incident when the water main broke and she did not return to work. *See*  SMF ¶¶ 24-29.  However, Plaintiff was never actually charged and any disciplinary actions were expunged from her record.  Id. at ¶¶ 28,29.

decision which found insufficient evidence to support Plaintiff's claims. Plaintiff appealed the DOT decision and the EEOC ultimately affirmed it in 1997. Plaintiff filed the instant lawsuit in Federal Court on March 9, 1998. Plaintiff makes the following allegations as stated in her Amended Complaint:

1. Defendant failed to grant her a reasonable accommodation for her disability;

2. Defendant discriminated against her on the basis of her disability and gender, when they issued her a lower performance appraisal for the rating period of October 1991-December 1991;

3. She was discriminated against on the basis of her gender, disability and retaliation when she received a lower performance appraisal in July 1992; and

4. She was subject to a hostile work environment based on her gender, disability and retaliation.

*See* Amended Complaint Counts I, II, III, and IV. Upon consideration of the entire record herein, and for the reasons set forth below, Defendant's Motion for Summary Judgment is granted.

## II. LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. Celotex, 477 U .S.

at 322; Anderson, 477 U.S. at 248.

### III. DISCUSSION

### A. Gender Discrimination Claim

Title VII of the Civil Rights Act of 1964, prohibits the federal government from discriminating on the basis of basis of sex in all personnel decisions. 42 U.S.C. § 2000e-16(a). A prima facie case of disparate-treatment discrimination is made by a plaintiff, "by establishing that: '(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.' " Stella v. Mineta, 284 F.3d 135, 145 (D.C.Cir.2002) (*quoting* Brown v. Brody, 199 F.3d 446, 452 (D.C.Cir.1999)).

In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) the Supreme Court held that a plaintiff bears the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. Id. at 802. Then, if the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. Id. If the employer meets its burden, the plaintiff must then demonstrate that the employer's stated reason was in fact a mere pretext for discrimination. Id. at 804. However, a plaintiff that offers only "mere speculations" to refute the employer's proffered legitimate, non-discriminatory reason fails to create a genuine issue of material fact to avoid summary judgment. Brown v. Brody, 199 F.3d 446, 459 (D.C.Cir.1999).

Defendant argues that summary judgment is appropriate for Plaintiff's gender discrimination claim on the basis that she cannot establish an "adverse employment action" and that she has offered no evidence in the record giving rise to an inference of discrimination. Specifically, Defendant argues that Plaintiff cannot demonstrate that her supervisor, Machado, gave other

employees better evaluations under the same circumstances.

Plaintiff counters that summary judgment is not appropriate because she is a member of a protected class and has alleged that Machado treated men better than women. Plaintiff points to performance appraisals and avers that females received lower job performance ratings than men. Plaintiff also alleges general ill-treatment by Machado. PSDMF ¶ 79-89.

Defendant acknowledges Plaintiff's protected class status, but points out that she still demonstrates no adverse employment action by the USSS due to her gender. Defendant contends that in the DC Circuit, satisfactory and even poor performance appraisals do not constitute adverse personnel actions if they are not accompanied by events such as a demotion to a lower grade or a reduced salary. *See,* Brown, at 458 (D.C. Cir. 1999) (finding that a "fully successful" job performance rating is not an adverse employment action).

An adverse employment action is, "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Broderick v. Donaldson, 437 F.3d 1226, 1233 (D.C.Cir.2006). An adverse action occurs, "when an employee experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." Holcomb v. Powell, 433 F.3d at 902 (*quoting* Forkkio v. Powell, 306 F.3d 1127, 1130-31 (D.C.Cir.2002)). In Stewart v. Evans, 275 F.3d 1126 (D.C.Cir.2002), the court of appeals explained that an agency action is not, "an actionable adverse action ... unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage." Stewart at 275 F.3d 1126, 1134 (D.C.Cir.2002) (quoting Walker v. WMATA, 102 F.Supp.2d 24, 29 (D.D.C.2000)).

Plaintiff argues that she suffered adverse employment actions by virtue of her lower performance appraisals.  The Court is not persuaded by this argument.  In accordance with Brown, Plaintiff's performance appraisals of "Fully Successful" and "Exceeds Fully Successful" certainly do not rise to the level of an "adverse employment action."  Furthermore, the record indicates that Plaintiff was actually  promoted in 1991 from a GS-9 to a GS-11. SMF ¶ 12.

 Similarly, Plaintiff's general allegations of mistreatment by Machado do not rise to the level of, "materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities" as contemplated by the above cited cases. Indeed, "not everything that makes an employee unhappy is an actionable adverse action." Russell v. Principi, 257 F.3d 815, 818 (D.C.Cir.2001).  Finally, the Court's conclusion is further buttressed by the fact that Plaintiff  herself points out that she was never written up, received any reprimands or had any disciplinary actions taken against her. (PSDMF  ¶78).    Plaintiff therefore cannot make a *prima facie* case for a discrimination claim because there was no material adverse employment action taken against her.  Summary Judgment is appropriate on her Gender Discrimination Claim.

**B.  Retaliation Claim**

Plaintiff alleges that she was retaliated against for participating in EEO activities. Complt. ¶ 32. Title VII prohibits an employer from retaliating against an employee because she "has opposed any practice made an unlawful employment practice by this title, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." See 42 U.S.C. § 2000e-3(a).  A plaintiff claiming unlawful retaliation must prove her case under the burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See* Smith v. District of Columbia, 430 F.3d

450, 455 (D.C.Cir.2005).

Under this framework, to establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) she engaged in a statutorily protected activity; (2) defendants took an adverse employment action; and (3) there is a causal relationship between the two. *See* Stewart v. Evans, 275 F.3d 1126, 1133 (D.C.Cir.2002) . "A common element required for discrimination and retaliation claims against federal employers ... is ... [an] adverse action by the employer." Brown v. Brody, at 453.

For the reasons discussed above, Plaintiff failed to demonstrate that an adverse employment action was undertaken against her. Consequently, Plaintiff cannot meet element number two of a retaliation claim and Defendant is entitled to summary judgment.

## C.  Hostile Work Environment

Plaintiff alleges that Defendant subjected her to a hostile work environment based on her gender, disability and retaliation. Plaintiff sets forth 22 incidents which she argues give rise to her hostile workplace claim. Defendant argues that despite the number of incidents alleged by Plaintiff, summary judgment is appropriate for her hostile work environment claim because none of the incidents give rise to an inference of discrimination on the basis of gender, disability or retaliation.

"To establish a prima facie hostile work environment claim, plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was subject to unwelcome harassment; (3) the harassment occurred because of her race [gender] or disability; (4) the harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment, but failed to take any action to prevent it". Lester v. Natsios, 290 F.Supp.2d 11, 22 (D.D.C.,2003).

In Harris v. Forklift Systems, the United States Supreme Court explained a hostile work environment as follows, "we can say that whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). "Not all abusive behavior, even when it is motivated by discriminatory animus, is actionable. Rather, a workplace environment becomes 'hostile' for the purposes of Title VII only when offensive conduct 'permeate[s] [the workplace] with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Barbour v. Browner,181 F.3d 1342, 1347 (D.C. Cir.1999) *quoting* Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 118 S.Ct. 998, 1001, 140 L.Ed.2d 201 (1998).

After reviewing each of Plaintiff's allegations of harassment (*See* Plaintiff's Statement of Disputed Material Facts (PSDMF) ¶¶ 79-89 and Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Pltf's Opp Brief) p. 34-35), the Court finds that under the circumstances no reasonable jury could find that Plaintiff has set forth sufficient facts to establish a hostile work environment.

The Court declines to address each of Plaintiff's incidents which appear largely disjointed, inconsistent and unrelated. Moreover, none of these allegation raises a significant inference of

9

discrimination on the basis of gender, disability or retaliation . The first incident Plaintiff construes as harassment is that her supervisor, "circulated her job application to other employee stating that these were the credentials he was looking for in other employees." Pltf's Opp Brief ¶ a. This can hardly be construed as harassment. Several of Plaintiff's incidents concern general subjective allegations of rude behavior by Machado. For example, Plaintiff alleges Machado would raise his voice louder than usual talking to her or telling Plaintiff that she is "not civil" and that she is "difficult to work with.". Pltf's Opp Brief ¶¶ o, p . Plaintiff's alleged incidents are construed, at best, as merely offensive and the Court finds no compelling evidence that Plaintiff was physically threatened. In addition, Plaintiff states that she was a good worker, far superior to two male employees, and actually deserved a rating of 400, the best possible rating. *See* PSDMF ¶¶ 38, 74, 75. By Plaintiff's account of the quality of her work, the alleged "hostile work environment" obviously did not interfere with her ability to complete her work in a competent manner. Finally, there is no significant indication, aside from the conclusory and subjective views of the Plaintiff, that any of these incidents were compelled by her gender, disability or retaliation.

Other incidents include Plaintiff complaining that the work area was too warm and that the Defendant failed to accommodate her. Pltf's Opp Brief ¶ b. However, Plaintiff admits that other employees objected to the heat as well and were subject to those same conditions, which precludes an inference of harassment directed at Plaintiff. Nevertheless, as discussed *infra*, the USSS made a reasonable effort to correct those conditions. Two of Plaintiff's allegations involve Machado "bursting" into her office looking for another employee. Pltf's Opp Brief ¶¶ s, t. The Court fails to understand how that rises to the level of a hostile work environment. Plaintiff alleges that Machado increased her workload five to six times higher than other employees and generally gave

men less work than women.. Pltf's Opp Brief ¶ r..  However,  Plaintiff also generally complains that the only major project she was given was the Agency's correspondence manual. PSDMF ¶ 38.  Plaintiff suggests that performance appraisals skewed to favor men contributed to a hostile work place.  Pltf's Opp Brief ¶ j.  However, the record reflects, and Plaintiff acknowledges, that out of the six employees, Ann Parker, a black female, received the same top score as the two men. *See* PSDMF ¶ 70.  Finally, Plaintiff makes several general conclusory allegations that the USSS harassed her regarding a criminal investigation and sent details of her complaint over the LAN network.  Pltf's Opp Brief ¶¶ q,u,v.  However, she does not provide any further factual or legal support that these activities were in any way inappropriate.   The remaining alleged incidents are not sufficiently severe or pervasive to alter the conditions of the her employment and create an abusive working environment.

It is abundantly clear from the record that Plaintiff and Machado had a poor working relationship.  However, that does not compel a finding of a hostile work environment within the context of the above-cited case law and Plaintiff cannot, as a matter of law,  prove a *prima facie* case.  Consequently, the Court concludes that the  facts alleged by Plaintiff, even if true, would not permit a reasonable jury to conclude that her workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.  Summary Judgment for Defendant is appropriate.

**C. Disability Discrimination Claims**

The standards used to determine whether a federal agency has violated the Rehabilitation Act are the same standards that are to be applied under the Americans with Disabilities Act, 42 U.S.C.

§§ 12111 et seq ("ADA"). See 29 U.S.C. § 791(g). Under the familiar McDonnell Douglas framework, an ADA plaintiff must prove that "[s]he had a disability within the meaning of the ADA, that she was 'qualified' for the position with or without a reasonable accommodation, and that [s]he suffered an adverse employment action because of [her] disability." Swanks v. WMATA, 179 F.3d 929, 934 (D.C.Cir.1999). "Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." Toyota Motor Mfg. Kentucky, Inc. v. Williams, 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). The Act's terms are "interpreted strictly to create a demanding standard for qualifying as disabled." Id. at 197.

Defendant argues that Plaintiff's claim for Intentional Disability Discrimination fails on the ground that she is not a *qualified* person with a disability. Defendant acknowledges she is an individual with an impairment. However, Defendant argues that she can not demonstrate that her impairment substantially limits her in a major life activity.

At the outset, Plaintiff's ADA and Rehabilitation Act claims fail for want of an "adverse employment action" as discussed above. Plaintiff can not prove that she suffered an adverse employment action as a result of her disability. Nevertheless, even assuming an adverse employment action existed, Plaintiff fails to set forth how she is significantly restricted in her ability to perform the major life activities she describes[3].

---

[3] So far as Plaintiff asserts that working is a major life activity, she provides no compelling evidence as to how her impairment affects her ability to perform a class or range of jobs available to her. *See* Duncan v. Washington Metropolitan Area Transit Authority, 240 F.3d 1110, 1115 (D.C. Cir. 2001) ("to establish substantial limitation of working activity under the ADA, a plaintiff must allege and prove that in his particular circumstances, taking into account the appropriate factors, his impairment prevents him from performing a 'substantial class' or 'broad range' of jobs otherwise available to him."). In other words, "the ADA requires a

Plaintiff contends that her headaches substantially limit a variety of major life activities[4]. However, Defendant points out that on some days when Plaintiff indicated that she was experiencing migraine headaches she was actually working a second job for the Baltimore Orioles[5]. Defendant provides time sheets from the Baltimore Orioles on days when Plaintiff's headache chart indicated she experienced severe and incapacitating headaches. This seriously calls into question Plaintiff's alleged inability to perform major life activities while experiencing headaches.

Further, even assuming the Plaintiff experiences heat-triggered migraines, she fails to present sufficient evidence to support her position that her headaches substantially limit a major life activities. Plaintiff's subjective complaints without objective medical evidence specifically relating to how her impairment substantially affects her major life activities are insufficient. Plaintiff's medical evidence from her treating physician and a registered nurse do not directly address how her disability substantially impairs her major life activities. Consequently, Plaintiff fails to establish that she is a qualified person with a disability necessary for her ADA Claim. No genuine factual issues

---

plaintiff ... to produce some evidence of the number and types of jobs in the local employment market in order to show he is disqualified from a substantial class or broad range of such jobs; that is, the total number of such jobs that remain available to the plaintiff in such a class or range in the relevant market must be sufficiently low that he is effectively precluded from working in the class or range." Id. At 1115, 1116. *citing* Webb v. Clyde L. Choate Mental Health & Dev. Ctr., 230 F.3d 991, 997 (7th Cir.2000) (finding that summary judgment was appropriate against psychologist suffering from severe asthma, osteoporosis, and a weakened immune system because he "ha[d] not presented evidence that his condition prevents him from performing a class of jobs").

[4] According to Plaintiff, these activities include her ability eat, hear, read, write, concentrate comprehend remember, see, sleep, smell, stand, walk, talk communicate, anything to do with her hands and fingers including washing, buttoning, zippering, brushing teeth or personal grooming. *See* Pltf's Opp Brief p.19.

[5] Plaintiff does not dispute working for the Baltimore Orioles on days she claimed to have migraines. According to Plaintiff, she was eventually indicted on criminal charges which were subsequently dismissed with prejudice. *See* Pltf's Opp Brief p.19 n. 4.

exist and Defendant is entitled to judgment as a matter of law.

**D. Failure to Accommodate.**

Assuming *arguendo* that Plaintiff was person with a qualified disability, her ADA claim fails because the USSS made reasonable accommodations for her disability of heat triggered migraine headaches.

The Defendant argues that even if Plaintiff was a qualified person with a disability, she was reasonably accommodated[6]. The record before the Court suggests that Plaintiff never made any formal or written complaint about the heat in the work area, but was simply one of a number of employees who asked Machado to address the heat and poor ventilation issues. *See* PSDMF ¶¶ 22, 23. Nevertheless, as a result of the complaints, the record reflects that the USSS installed large fans in the work area, and commissioned two separate air quality studies by Biospherics Incorporated on December 20, 1991 and May 14, 1992. *See* SMF ¶¶ 45, 65. Further, the USSS ultimately installed a separate air conditioning unit in the area for Plaintiff. Id. at ¶ 54. Plaintiff acknowledges that some measures were taken by the USSS, but argues that the accommodation was inadequate because it was untimely and inept. Plaintiff simply makes no mention of the air conditioner installed for her benefit. Plaintiff's contention that she was entitled to an immediate accommodation is without merit. Accommodations for a disability need only be reasonable. *See* Earl v. Mervyns, Inc., 207 F.3d 1361, 1367 (11th Cir.2000) (explaining that, "the use of the word 'reasonable' as an adjective for the word 'accommodate' connotes that an employer is not required to accommodate an employee

---

[6]Defendant points out that on Standard Form 177, Statement of Physical Ability for Light Duty, submitted to USSS with Plaintiff's employment application she indicated that she could work under the following conditions: "extreme heat, dusty atmosphere, and some exposure to fumes smoke and gases." SMF ¶ 42.

14

in any manner in which that employee desires.") *See also* Hankins v. The Gap, Inc., 84 F.3d 797 (6th Cir.1996) (employer was not necessarily required under ADA to transfer employee to other locales simply because of workplace induced migraine headaches).  Plaintiff's argument that the accommodation was not reasonable because it was, in her opinion, untimely is unavailing. Consequently, the Court finds that the accommodations provided by the USSS were reasonable under the circumstances and the Defendant is entitled to summary judgment as to Plaintiff's claim for Failure to Grant Reasonable Accommodation.  *See* Complt., Count I.

### III. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment [Dkt. No. 65] is **GRANTED** as to all counts in Plaintiff's Complaint.  The Clerk of Court is directed to enter judgment in favor of Defendant and notify the parties of the making of this Order.

DATED this 17th day of September, 2008.


/s/ Jack D. Shanstrom
_____
Jack D. Shanstrom
Senior United States District Judge